IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01952-MEH

KATIANA A. WISE,
NATHAN B. KENNEDY,
YASMEEN J. KENNEDY,
JOHNNY WATSON,
BEATRICE V. WATSON,
Ky.L.W.,
Kor.L.W.,
Ko.L.W.,

    Plaintiffs,

v.

ARAPAHOE COUNTY DEPARTMENT OF HUMAN SERVICES,
Child and Adult Protection Services Division,
JASON LESTER,
CHERYL TERNES,
MICHAEL DEGRETTO,
TRACY MAQUIRE,
JODI MAPLES,
MARGARET BOOKER,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court are Defendants' Motions to Dismiss. ECF 94, 96. The Motions are fully briefed, and the Court finds that oral argument will not materially assist in their adjudication. For the reasons that follow, the Motions are granted.

## BACKGROUND

    This lawsuit concerns the removal of three children from their home and the decision to place them in foster care rather than with a family member.

**I.     Alleged Facts**

Plaintiffs Ky.L.W. and Kor.L.W. were infant fraternal twins living in the home of their mother, Plaintiff Katiana Wise, and father. On December 7, 2018, the parents took Ky.L.W. to the hospital in medical distress and for injuries that the father allegedly caused in providing first aid. ECF 92 at ¶¶ 24–26; ECF 92-1. The infants were almost three months old. ECF 92 at ¶ 24.

Kor.L.W. was uninjured and with her great-aunt, Plaintiff Yasmeen Kennedy, and great-uncle, Plaintiff Nathan Kennedy, while the parents were at the hospital. Yasmeen Kennedy says that she was actively cooperating with Defendant Arapahoe County Department of Human Services ("ACDHS") to take Kor.L.W. to the hospital for his own medical evaluation. *Id.* at ¶¶ 27–28, 33.

Simultaneously, on December 7, 2018, ACDHS obtained a verbal order to remove the uninjured twin. Plaintiffs allege that the removal was based on a false impression that the family was being uncooperative with respect to Kor.L.W. They assert false reports that Yasmeen Kennedy was hiding Kor.L.W. and that the parents were refusing to bring him to the hospital. *Id.* at ¶¶ 29–34.

On December 11, 2018, the father submitted an affidavit to Arapahoe County Deputy Sheriff Fehringer. In it, the father described Ky.L.W.'s health problems and his actions on December 7 and an earlier day that caused injury to the child. *Id.* at ¶ 35; ECF 92-1.

On December 11, 2018, the state court held a hearing on the Petition to Determine Dependent or Neglected Children pursuant to Colo. Rev. Stat. § 19-3-502 that ACDHS had filed. Katiana Wise submitted a Child Placement Affidavit in which she expressed her preference that the infant twins be placed with family. She named Yasmeen Kennedy and Plaintiff Beatrice Watson (the twins' great-grandmother) as family member guardians. Beatrice Watson submitted

her resume detailing her over 40 years working in the education field both as a teacher and principal as well as her experience as a court-appointed special advocate. ECF 92 at ¶¶ 36–39.

ACDHS Caseworker Allen told Beatrice Watson and Plaintiff Johnny Watson (the great-grandfather) that they were the top placement choice and would likely have the twins by December 25, 2018. *Id*. at ¶ 40. On January 17, 2019, ACDHS issued a Family Services Plan in which it identified Yasmeen Kennedy and Beatrice Watson as preferred placement caregivers. *Id*. at ¶ 42. In its monthly Family Services Plan statements, ACDHS indicated its intent to evaluate the family for placement, but ACDHS allegedly did not follow through on that evaluation. *Id*. at ¶¶ 45–46.

On December 18, 2018, the court issued a temporary custody order which stated that reasonable efforts had been made to avoid foster care placement. *Id*. at ¶ 41. On January 30, 2019, the infant twins were adjudicated dependent and neglected. *Id*. at ¶ 43. On April 15, 2019, a Placement Order was issued. It stated that reasonable efforts had been made to place the infant twins with family, but Plaintiffs counter that no such attempts or efforts had been undertaken. *Id*. at ¶ 47.

On April 16, 2019, ACDHS issued a LINKS report which included a request for Katiana Wise to identify three relatives for the twins' placement. She already had identified those three relatives: Beatrice Watson, Yasmeen Kennedy, and an additional family member. *Id*. at ¶ 48.

In late spring 2019, ACDHS Caseworker Sanden and Defendant Jodi Maples[1] conducted a walk-through inspection of the Watson home. *Id*. at ¶ 49.

On May 15, 2019, ACDHS issued a report which mentioned the repeated denials of Katiana Wise's housing voucher requests. Plaintiffs allege that Defendant Jason Lester denied those

---

[1] The pleadings indicate that Ms. Maples was an employee of Tracy Maguire, Esq., whom the state court had appointed to serve as the siblings' guardian *ad litem*. ECF 92 at ¶ 76; ECF 96 at 3.

3

requests even though he has a habit and practice of approving them for white applicants. *Id*. at ¶ 50. Jason Lester and Kellie Terrell later reported that Katiana Wise's housing assistance request on October 9, 2019 had been denied. *Id*. at ¶ 60.

On June 4, 2019, ACDHS Caseworker Sanden received "TRAILS" reports related to the Kennedys' background check. *Id*. at ¶ 51.

On June 17, 2019, Caseworker Sanden instructed the Watsons to take a specific medical training program to learn how to care for Ky.L.W. They completed that training on June 28, 2019. *Id*. at ¶ 53. On June 25, 2019, Case Worker Sanden informed Beatrice Watson that Kor.L.W. would be brought to their home for a visit. *Id*. at ¶ 52. An ACDHS report on July 8, 2019 contains the notations, "Spoke with Yasmeen on May 31 re: placement option" and "Beatrice—placement option request by both parents." *Id*. at ¶ 54. On July 15, 2019, Beatrice Watson had a telephone conference with a hospital clinician to learn how to care for Ky.L.W. at home. *Id*. at ¶ 55.

Defendant Tracy Maguire cancelled Ky.L.W.'s home visit with the Watsons. *Id*. at ¶ 52. Placement with the Watsons later was denied. *Id*. at ¶ 56.

Parenting Coach Clark and Supervisor Berge stated in ACDHS parenting time reports dated June 28, August 15, and November 6, 2019 that the twins were comfortable, happy, and recognized their mother, Katiana Wise. *Id*. at ¶¶ 57, 61.

On August 6, 2019, Caseworker Sanden and Jason Lester recommended to the court "the permanency goal of adoption," despite family members meeting every conceivable placement qualification. In recommending adoption, Plaintiffs allege that Sanden and Lester conspired to violate the family's integrity and Colorado law. *Id*. at ¶ 58.

On September 3, 2019, a Notice of Permanency Hearing was filed. On November 6, 2019, a Motion to Terminate Parent–Child Relationship was filed, which Plaintiffs complain inaccurately reported that less drastic options and alternatives had been considered. The motion

was filed despite no recent "LINKS" meetings and no investigation of family placement options. *Id*. at ¶ 62.

On December 18, 2019, Katiana Wise gave birth to Ko.L.W., the twins' sibling. Nathan and Yasmeen Kennedy already had agreed to serve as the infant's legal guardians and to assume custody. Immediately after Ko.L.W.'s birth, the Kennedys petitioned for guardianship in Arapahoe County District Court. On December 19, 2019, ACDHS obtained a verbal order to remove Ko.L.W. from Katiana Wise and to place him in foster care. The removal order stated that reasonable efforts were made to prevent placement. *Id*. at ¶¶ 63–64.

ACDHS removed Ko.L.W. from the hospital. Nathan Kennedy was present at the hospital, and during his conversation with Ms. Terrell and Ms. McFarland, he raised his voice and talked over them. Security was present as a matter of standard protocol but took no action against him. ACDHS falsely represented to the court that Mr. Kennedy had threatened the safety of Ms. Terrell and Ms. McFarland and has anger issues. The incident later was used as the reason to deny placement of all three siblings in the Kennedy home. *Id*. at ¶¶ 65–68.

In support of removing Ko.L.W. from his maternal family, the ACDHS Defendants accused Katiana Wise of abandoning him one day after the birth. *Id*. at ¶ 69.

All three siblings were removed from the maternal family. Plaintiffs allege that the guardian *ad litem*, Defendant Tracy Maguire, and her employee, Jodi Maples, did not follow proper procedures. Plaintiffs allege that kinship placement was not considered or investigated; sibling visits did not occur; Katiana Wise was repeatedly denied access to her children at scheduled visits; and the assigned foster parents were not investigated. Plaintiffs also allege that Ms. Maguire made untruthful statements. *Id*. at ¶¶ 70–76.

Ms. Maples observed Katiana Wise with her infant children during ACDHS visitations. *Id*. at ¶ 77.

Plaintiffs cite the case of *Schwartz v. Booker*, 702 F.3d 573, 578 (10th Cir. 2012), which concerned the 2007 death of a child placed in foster care. Margaret Booker was named as a defendant in her capacity as head investigator at the Denver County Department of Human Services. Plaintiffs allege that Margaret Booker and Jason Lester conspired together to place the three infant siblings in care arrangements that would financially benefit Margaret Booker, contrary to the priority given to family unification. Plaintiffs allege that through that conspiracy, Ky.L.W. was placed in the foster care of Margaret Booker's daughter, Holly Booker. *Id*. at ¶¶ 78, 80–88.

Although Holly Booker was the assigned foster parent, Margaret Booker also cared for Ky.L.W. On March 23, 2020, while in Margaret Booker's care, Ky.L.W. suffered injuries when a skillet of cooking bacon fell on her head. *Id*. at ¶¶ 78, 82.

Katiana Wise was subject to a court-ordered treatment plan in which she agreed to attend Parent-Child Interaction Therapy with Ky.L.W. However, Holly Booker refused to take Ky.L.W. to those sessions, believing that the child did not need that particular therapy. *Id*. at ¶ 89.

On July 8, 2020, Tracy Maguire informed the Arapahoe County Juvenile Court that she was filing a Motion to Terminate Parental Rights regarding Ko.L.W. Plaintiffs allege that she sought that termination without investigating Katiana Wise or her current living situation. Plaintiffs allege that Ms. Maguire also has yet to investigate the maternal family, despite termination hearings pending for all three siblings. *Id*. at ¶¶ 90–91.

## II.   Claims for Relief

For their First Claim for Relief, Plaintiffs allege that Defendants ACDHS and Jason Lester performed their child protection duties in a way that infringed Plaintiffs' rights under federal and state law. They contend that they acted pursuant to a policy or custom to circumvent familial interests in order to place children in foster care or adoption. They allege that three siblings were removed from Katiana Wise and maternal familial members without an underlying reason and in

6

a racially discriminatory way. On the basis of those allegations, they bring a due process violation claim pursuant to 42 U.S.C. § 1983.

On the basis of the same allegations, Plaintiffs bring as their Second Claim for Relief the allegation that Defendants ACDHS, Jason Lester, and Margaret Booker acted as an unlawful conspiracy, in violation of 42 U.S.C. § 1985.

Plaintiffs bring an Intentional Infliction of Emotional Distress claim against Defendants ACDHS, Jason Lester, and Margaret Booker for knowingly making false statements at the various juvenile court proceedings involving the siblings. (Fourth Claim for Relief).

Plaintiffs bring two negligence claims against Tracy Maguire and Jodi Maples (the "GAL Defendants") for their Third and Fifth Claims for Relief. Plaintiffs allege that they breached a duty of care to help the infant siblings stay together, in a safe environment, and with their biological family. Plaintiffs also claim negligence *per se* for their alleged failure to comply with Colo. Rev. Stat. § 19-3-507(1)(b) and its requirement to take efforts to ensure familial placement.

Plaintiffs name as Defendants Michael DeGretto and Cheryl Ternes for their role as DHS supervisors who ratified the unlawful actions of the other Defendants.

## LEGAL STANDARDS

### I.     Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Dismissal under it is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss

under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). Plaintiff bears the burden of establishing that this Court has jurisdiction to hear his claims. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms:

> First, a facial attack on the complaint's allegations as to subject-matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. When reviewing a factual attack on subject-matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); *see also Pueblo of Jemez*, 790 F.3d at 1148 n.4.

The Court construes Defendants as making a facial attack on jurisdiction, and therefore, it assumes as true Plaintiffs' allegations. In addition, the Court considers the filings from the state court cases that the Defendants submit at ECF 95 and 97. Plaintiffs reference them in their Third Amended Complaint. Moreover, this Court make take judicial notice of them as a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264, n.24 (10th Cir. 2006).

The state court records that Defendants attach to their Motions show that Beatrice Watson has moved to intervene in the two juvenile court cases, ECF 95-2, 95-3, 97-4, and seeks to have the siblings placed with her (ECF 95-4, 95-5). The attachments include court filings such as the order that appointed Tracy Maguire as the guardian *ad litem* (ECF 97-7) and a report signed by Kelli Terrell and Jason Lester in January 2020 (ECF 97-9). Defendants submit a letter dated

December 19, 2019 from Nathan Kennedy to ACDHS and Kelli Terrell about the removal of Ko.L.W. from the hospital despite his willingness to serve as guardian. ECF 94-7; ECF 94-8; ECF 107-1.

## II.     Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, then the claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6)

standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## **ANALYSIS**

### I.      **Eleventh Amendment Sovereign Immunity**

ACDHS argues that except for one conclusory allegation at ¶ 95 of their Third Amended Complaint (ECF 92), Plaintiffs plead no wrongdoing for which it may be held liable under Section 1983. ECF 111 at 8–9. However, that argument is a moot point if, as ACDHS furthers, it has immunity from this federal lawsuit.

Generally speaking, a state may not be sued in federal court for damages, and that immunity extends to agencies that act as an arm of the state. *Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir. 1992). Plaintiffs contend that it is a fact question whether ACDHS qualifies as such. However, case law already has considered the status of Colorado's county-level departments of human services as created by Colo. Rev. Stat. § 26-1-118(1). The uniform answer is that they

are arms of the state and as such enjoy Eleventh Amendment sovereign immunity. *Goodwin v. Connell*, 376 F. Supp. 3d 1133 (D. Colo. 2019); *Schwartz v. Jefferson Cnty. Dep't of Human Servs.*, No. 09-cv-00915-WJM, 2011 WL 1843309, at *2 (D. Colo. May 16, 2011). That same conclusion was reached with respect to ACDHS specifically. *Wigger v. McKee*, 809 P.2d 999, 1004-05 (Colo. App. 1990). Plaintiffs cite no contrary case law or changed circumstances since the 2019 *Goodwin* ruling that would warrant renewed *de novo* inquiry.

Given the consistent, recent, and on-point case law, the Court finds ACDHS to have Eleventh Amendment immunity. As such, Plaintiffs' claims against it are dismissed without prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *Crone v. Dep't of Human Servs.*, No. 11-cv-02270-WJM-CBS, 2012 WL 5832438, at *9 (D. Colo. Oct. 5, 2012).

## II.     Abstention

Because Plaintiffs' claims concern the outcome of state court proceedings, they raise an additional jurisdictional defect. If, as Defendants argue, those proceedings have not concluded, then the abstention doctrine from *Younger v. Harris*, 401 U.S. 37 (1971) applies. *Younger* abstention precludes a federal court from intruding into an ongoing state criminal prosecution, certain civil enforcement proceedings, or civil proceedings that involve certain orders uniquely in furtherance of the state court's ability to perform its judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013).  Child dependency cases fall within the scope of important state court interests from which federal courts should abstain. *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996) (emphasizing that "[i]t cannot be gainsaid that adoption and child custody proceedings are an especially delicate subject of state policy [and] that family relations are a traditional area of state concern"). "*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

11

Plaintiffs do not dispute being party to two dependency and neglect ("D&N") actions in state juvenile court that remain open and pending. Instead, they argue that the claims they raise here do not overlap with the issues pending before the state court. However, there is an overlap because the claims that raise in this federal lawsuit restate their objections to Defendants' actions concerning the siblings' removal and placement with non-family members. Underlying their present claims is the argument that the siblings should have been placed in the care of either the Kennedys or the Watsons.

Plaintiffs further that the state juvenile court's jurisdiction is limited to those legal matters that Colo. Rev. Stat. § 19-1-104 lists. That statute defines the state juvenile court's area of responsibility, but Plaintiffs cite no legal authority holding that the statute precludes it from considering any particular legal issue that may relate to the decisions it is tasked to make. They do not demonstrate how the state juvenile court is an inadequate forum for raising all of their present objections and arguments, including constitutional violation allegations. *Chapman v. Oklahoma*, 472 F.3d 747 (10th Cir. 2006) (abstaining from exercising federal subject matter jurisdiction over plaintiff's constitutional violation claims regarding a family court's rulings). A federal court should assume that state procedures will afford an adequate remedy, and it is Plaintiffs' burden to establish that it does not. *Winters v. Kansas Dep't of Soc. & Rehabilitation Servs.*, No. 10-2181-JAR-DJW, 2011 WL 166708, at *8 (D. Kan. Jan. 19, 2011). Plaintiffs do not say that they tried—and were unsuccessful in that attempt—to raise their present federal law-based claims in the state court proceedings.

Very important interests are at stake for both the siblings and the family. *Arredondo v. Locklear*, 462 F.3d 1292, 1294 (10th Cir. 2006) (highlighting those competing interests). For that reason, Plaintiffs should raise all relevant legal issues, claims, or defenses in the D&N proceedings so that the state court may take them into consideration. In *C.N. by Nedd v. Meinster*, No. 18-cv-

00620-MSK, 2019 WL 200750, at *2–3 (D. Colo. Jan. 15, 2019), the court abstained from hearing claims very similar to those Plaintiffs raise here, to avoid interfering with the state juvenile court. Plaintiffs' preference to litigate legal issues in two different courts risks the kind of inconsistent outcomes that the abstention doctrine seeks to avoid. It is the primary responsibility of the state juvenile court to decide where the siblings should be placed, a decision which includes consideration of Defendants' actions.

Abstention compels the dismissal of Plaintiffs' claims for lack of subject matter jurisdiction.

### III.    Claims Against Individual Defendants

Plaintiffs name Jason Lester and Margaret Booker as Defendants for their due process violation and § 1985 conspiracy claims. Plaintiffs base those claims on the removal of the infant siblings from their biological parents and placement with guardians (foster parents) who are not members of the siblings' maternal family. Plaintiffs argue that there is no lawful basis for the non-familial placements. However, the ultimate decision of who should be the guardians now rests with the state juvenile court. Any arguments relevant to that decision should be raised within the context of the state court proceedings without interference from or potential conflicting rulings by this federal court.

For their Fourth Claim for Relief—Intentional Infliction of Emotional Distress—Plaintiffs allege that Jason Lester and Margaret Booker also "knowingly fabricat[ed] facts and general allegations throughout the various Juvenile Court proceedings directly involving Ky.L.W., Kor.L.W., & Ko.L.W." ECF 92 at ¶ 123. They identify no other conduct to support this claim for relief. Because the alleged outrageous conduct concerns allegedly false statements made to the state court and because those state court proceedings remain open and pending, this federal court

should abstain from hearing this claim, as well, so that Plaintiffs may raise the issue with the state court.

Consequently, the Court need not resolve Defendants' additional arguments why Plaintiffs fail to state those claims plausibly or whether Jason Lester has qualified immunity.

Plaintiffs include Cheryl Ternes and Michael DeGretto in the above claims. They bring suit against them in their supervisory capacity for ratifying the alleged wrongdoings by Jason Lester and Margaret Booker and for not taking preventive action. To the extent Plaintiffs proceed on a *respondeat superior* theory, no such liability exists under Sections 1983 and 1985. *Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Sims v. Wyandotte Cty.*, 120 F. Supp. 2d 938, 946 n.4 (D. Kan. 2000). To the extent Plaintiffs seek to hold them liable for actions they took directly or seek to hold them liable under state law causes of action, this Court abstains from hearing them so that they may be litigated in the state court proceedings.

## IV.   Negligence Claims Against the GAL Defendants

Plaintiffs raise two negligence-based claims (their Third and Fifth Claims for Relief) against the GAL Defendants, Tracy Maguire and Jodi Maples. Ms. Maguire explains that the state court appointed her as the siblings' guardian *ad litem* and that Ms. Maples is an employee of her law firm. ECF 96 at 3. They argue that Plaintiffs fail to state a plausible negligence claim against them. However, as with the ACDHS Defendants, there are jurisdictional and immunity issues that render those arguments moot.

The GAL Defendants argue that the Court lacks subject matter jurisdiction on the basis of *Younger* abstention and, to the extent the state juvenile court already has made decisions, on the basis of *Rooker-Feldman* abstention. That doctrine, drawn from *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), prevents a federal district court from hearing claims that either were at issue before the

state court or that are inextricably intertwined with the state court's ruling. The doctrine applies if a favorable ruling in the federal lawsuit requires finding the state court's ruling to be wrong or would render it ineffectual. *Crone*, 2012 WL 5832438 at *2-3. In other words, Plaintiffs may not appeal the state court's ruling to this federal district court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233–34 (10th Cir. 2006); *Davis v. Schnurr*, 818 F. App'x 852 (10th Cir. 2020). To the extent Plaintiffs are using this federal lawsuit to obtain relief from the state court's rulings, this Court would lack subject matter jurisdiction, and the claims would be dismissed without prejudice pursuant to Rule 12(b)(1). *Crone*, 2012 WL 5832438 at *9.

The GAL Defendants raise standing as an additional jurisdiction defect. The standing inquiry asks whose legal rights were injured by the GAL Defendants' alleged conduct. The law assigns a guardian *ad litem* the duty to act on behalf of a child's health, safety, and welfare, but the guardian *ad litem* answers to the court, to whom he or she makes recommendations about a child's best interests. *Colorado v. Gabriesheski*, 262 P.3d 653, 659 (Colo. 2011). The GAL Defendants argue that none of the Plaintiffs have standing to challenge how they carried out those responsibilities. The siblings' mother does not have a clear ability to litigate on the siblings' behalf. None of the other adult Plaintiffs have been granted leave to do so. The siblings themselves are not the GAL Defendants' clients.

Because the state court has not yet terminated the mother's parental rights, it is possible that she may have standing to appear on her children's behalf. However, the nature of the GAL Defendants' legal duties also raises the issue of immunity. Plaintiffs allege that they did not properly perform their duties, duties which Colorado law specifies at Colo. Rev. Stat. § 19-3-203. Those duties are integral to judicial proceedings, and as such, and to enable guardians *ad litem* to serve the best interests of children, they are given absolute quasi-judicial immunity. *Oosterhous v.*

15

*Short*, 730 F. Supp. 1037, 1039 (D. Colo. 1990). That immunity applies to Plaintiffs' negligence claims, and consequently, the Court dismisses those two claims with prejudice.

## **CONCLUSION**

Plaintiffs disagree with the decision to place all three infant siblings in the care of non-family members. They bring suit against various actors they hold responsible, but certain legal principles preclude this Court from hearing them. Some of those actors have immunity, and Plaintiffs' attempt to litigate their disagreement through claims raised in this federal court risks interference with the state court's ability to decide custody and placement.

Accordingly, Defendants' Motions to Dismiss [filed December 7, 2020 at ECF 94 and 96] are **granted**. The GAL Defendants are dismissed based on quasi-judicial immunity, and ACDHS is dismissed based on sovereign immunity. Plaintiffs' claims against all other Defendants are dismissed for lack of subject matter jurisdiction without prejudice to raising them in the state court proceedings. Given the nature of the defects, the Court finds that granting leave to file a fourth amended complaint would be futile. The Clerk of the Court shall close this case.

Dated at Denver, Colorado, this 16th day of March, 2021.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge